IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**TANYA GIRON,**

      Plaintiff,


v.                                CIV. No. 96-0980 LH/DJS


**CORRECTIONS CORPORATION OF AMERICA,** a Delaware corporation, **WARDEN THOMAS NEWTON** in his individual capacity, and **CORRECTIONS OFFICER DANNY TORREZ** in his individual capacity,

      Defendants.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on CCA Defendants'[1] Motion for Partial Summary Judgment on Counts II and III of Plaintiff's Complaint (Docket No. 144).  It is undisputed for purposes of this motion[2], that on May 26, 1994, Defendant Danny Torrez, a

---

[1] Corrections Corporation of America ("CCA") and former Warden Thomas Newton have collectively referred to themselves in this motion as the "CCA Defendants".

[2] See Defendants' Reply Brief at page 9.

1

corrections officer employed by CCA, gained access to Plaintiff's cell and raped her.  Plaintiff

alleges violations of her Eighth Amendment rights in Counts II and III of her complaint, against

CCA and former Warden Newton.  Specifically, in Count II she asserts that Defendants' failure to

adequately train and supervise corrections officers, and to institute and enforce safeguards against

conduct complained of in the complaint, constituted deliberate indifference to Plaintiff's Eighth

Amendment rights.  Count III alleges that Defendants deliberately refused to render to Plaintiff

adequate psychological or psychiatric treatment and that this deliberate indifference to Plaintiff's

known, serious medical needs deprived her of her Eighth Amendment rights.

In their motion for summary judgment, Defendants argue (1)  that there is no evidence

that they acted with deliberate indifference to Plaintiff's constitutional rights in terms of prison

conditions, training,[3] supervision, or medical care;  (2)  that there is no causal connection between

any alleged deliberate indifference and Plaintiff's injuries; and (3)  that they are entitled to

summary judgment based on a "good faith" defense.

In her response to Defendants' motion for summary judgment,  Plaintiff challenges CCA's

practices concerning the design, staffing, and operation of the segregation unit where she was

housed, arguing that these practices demonstrate deliberate indifference to the rights of the facility

inmates.  She argues that she has presented ample, undisputed evidence that CCA  knew of and

disregarded a substantial risk that she would be sexually assaulted in the segregation unit, and thus

was deliberately indifferent under standards set forth in  *Farmer v. Brennan,* 511 U.S. 825

(1994).

---

[3]  The Court notes that in her brief at page 2, note 1, Plaintiff indicates that she is not asserting any
constitutional deficiencies in CCA's training programs.  Accordingly, the claims to this effect, contained in Count II of
the complaint, are dismissed.

For the reasons that follow, the Court concludes that as a matter of law, Defendants did not act with deliberate indifference to Plaintiff's constitutional rights in terms of prison conditions, supervision, or medical care.  Defendants' Motion for Partial Summary Judgment on Counts II and III of Plaintiff's Complaint (Doc. No. 144) is accordingly **granted** and these two counts are **dismissed.**

**I.  Discussion**

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.,* 52 F.3d 1522, 1527 (10th Cir. 1995).

A summary judgment movant  bears the initial burden of showing the Court that there is an absence of evidence to support the nonmoving party's case.  *Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997).  Once the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue of trial as to those dispositive matters for which it carries the burden of proof.  *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996).   All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party.  *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co*. at 1527.

**A.  Eighth Amendment Standards**

The Eighth Amendment protects all prisoners from cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  While the Constitution "does not mandate comfortable prisons,"

*Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), neither does it permit inhumane ones.  The Eighth Amendment imposes duties on prison officials,  that must ensure that inmates receive adequate food, clothing, shelter, and medial care, and must "take reasonable measures to guarantee the safety of the inmates".  *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984). Specifically, being violently assaulted in prison is simply not "part of the penalty that criminal offenders pay for their offenses against society."  *Rhodes v. Chapman*, 452 U.S. at 347.

Despite these principles, not every violent assault suffered by an inmate translates into constitutional liability for prison officials responsible for the inmate victim's safety.  To state a cause of action under the Eighth Amendment for a deprivation of a constitutional right, first of all the alleged deprivation must be an "objectively sufficiently serious" deprivation of the "minimal civilized measure of life's necessities.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

For purposes of this motion, there is no factual dispute that Plaintiff was sexually assaulted by Officer Torrez.  The Tenth Circuit has expressly acknowledged that an "inmate has a constitutional right to be secure in her bodily integrity and free from attack from prison guards." *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993).  Clearly, Plaintiff's deprivations resulting from this assault are sufficiently serious to satisfy the first prong of this analysis and to constitute a violation under the Eighth Amendment.  *See Barney v. Pulsipher*,  No. 96-4192, 1998 WL 213684 (10th Cir. May 1, 1998).

Secondly,  the prison official must have a "sufficiently culpable state of mind."  *Id. at *8.* "Liability of a supervisor under section 1983 must be predicated on the supervisor's deliberate indifference."  *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997).  The state of mind is determined by whether the prison official had a deliberate indifference to the inmate's health or

safety.  The *Farmer v. Brennan* case defined for the first time the Eighth Amendment standard of deliberate indifference that was originally formulated in *Estelle v. Gamble*, 429 U.S. 97 (1976).  A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety;  the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*. at 837.  Thus, the deliberate indifference standard in a prison conditions case is a "subjective" and not an "objective" requirement.   Accordingly, a prison official is liable only if the "official knows of and disregards an excessive risk to inmate health and safety".  *Farmer v. Brennan* at 837.  It is not enough to establish that the official should have known of the risk of harm.  *Id.*

In *Farmer v. Brennan*, the Supreme Court observed  however that a prison official is not "free to ignore obvious dangers to inmates."  *Id*. at 842.

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Id*.

Under the test adopted by *Farmer v. Brennan*, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act *despite his knowledge* of a substantial risk of serious harm.  *Id*.  For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented,

or expressly noted by prison officials in the past, and the circumstances suggest that the

defendant-official being sued has been exposed to information concerning the risk and thus 'must

have known' about it, then such evidence could be sufficient to permit a trier of fact to find that

the defendant-official had actual knowledge of the risk.

Also, regarding the risk of assault, the prison official need not be aware of the risk with

respect to

> the specific [individual] who eventually committed the assault . . . . [I]t does not matter
> whether the risk comes from a single source or multiple sources, any more than it matters
> whether a prisoner faces an excessive risk of attack for reasons personal to him or because
> all prisoners in his situation face such a risk.

*Farmer v. Brennan* at 843.

Bearing this precedent in mind, the Court  will evaluate the relevant facts in this case.

### B.  Prison Conditions--Count II

Defendants argue that there is no evidence that they had  notice or reason to believe

Defendant Torrez might engage in sexual contact with an inmate or that he might be a danger to

an inmate, prior to May 26, 1994.  Evidence on this issue is as follows.

Prior to this incident,  Defendant Torrez received above-average evaluations regarding his

job.  (Newton Aff., ¶Para. 9.)  Warden Newton testified that prior and subsequent to May 26,

1994, he did not believe that the policies, procedures, training or supervision regarding personnel

and inmates created a risk of harm to the inmates at this facility.  (Newton Aff.,  ¶. 8).[4]

The current warden, Penny Lucero, states in an affidavit that the design and use of the K

pod segregation unit where Plaintiff was housed were approved by the New Mexico Department

---

[4]  CCA's expert gives the opinion that its applicable policies and procedures address prisoners' rights and
protection from abuse and that they meet generally accepted correctional practices.  (Rosazza Aff., pp. 4 and 6).

of Corrections and a Special Master under the *Duran* Consent Decree.  The Special Master

reviewed privacy issues for the entire facility and approved the use of showers in this type of

location, according to Lucero's affidavit.

In response, Plaintiff highlights the two incidents of sexual misconduct by a security

officer and a corrections officer of the facility, during the five years it was in operation prior to the

incident in this case.   According to  Warden Newton's affidavit, following each of these two

incidents, the offending officer was promptly relieved of his duties.  *(*Newton Aff.,  ¶Para. 10).   I

have reviewed what is contained in the record regarding these two incidents and conclude that

they are simply inadequate, taken in the context of the prior five year history of the institution, to

establish the subjective criteria set forth in *Farmer v. Brennan*.  In other words, even assuming

that Defendants were aware of both of these prior incidents, the mere fact of their occurrence is

not sufficient to establish that Defendants must have drawn the inference that a substantial risk of

serious harm existed.

Plaintiff next mentions six incidents of alleged sexual impropriety between prison guards

and inmates that occurred at this facility.  Apparently this evidence is offered to illustrate that

Defendants were aware of a risk of sexual assault to Plaintiff.  All six of these incidents occurred

*after* the incident in question in this case.  As such, they cannot establish that Defendants knew of

and disregarded a risk to Plaintiff, and are therefore irrelevant to Plaintiffs' claims.[5]

In Plaintiff's deposition, at pp. 54-55, she testified that Officer Torrez had been

disrespectful to her previously and that she told the commander a couple of times that Officer

---

[5]  Plaintiff also mentions that, despite Defendant Torrez' guilty plea to a drug offense in 1986, CCA hired him
in July of 1992.  The Court fails to see the relevance of this fact insofar as Plaintiff's burden to establish deliberate
indifference and reckless disregard for her safety is concerned.

Torrez had been harassing her.  The commander's response, according to Plaintiff, was to laugh.

A main aspect of Plaintiff's argument is that her expert, Kathryn R. Monaco,  concluded that Defendants had a deliberate indifference and reckless disregard for Plaintiff's safety and that these conclusions are sufficient to demonstrate a prison official's deliberate indifference.

Ms.  Monaco, made the following statements in her report:

1.  The design and use of the K pod segregation unit and control center creates a voyeuristic atmosphere and places the women offenders on display in a way that heightens the probability of sexual contact between offenders and staff.[6]  Further, the design and use is such that the visibility and supervision of cell 101, where Tanya Giron was housed, is seriously compromised by the shields around the shower area.[7]

2.  The staffing on the day of the incident was inadequate to provide supervision of Tanya Giron.[8]

3.  The segregation unit where Tanya Giron was housed is operated in a way that is hazardous to inmates and staff.[9]

Ms.  Monaco concluded, based on these three findings, that CCA and the administration of the facility, who have sole and complete control over the design, staffing and operation of the facility, had a deliberate indifference and reckless disregard for the safety of Tanya Giron.

Ms.  Monaco noted that the facility was not operated in compliance with the Duran consent decree in that an insufficient number of officers staffed the segregation unit.  (Monaco Depo. at 86)

---

[6]  Monaco opined that the design flaw was intentional.  (Ex. 1, Deposition at page 83).

[7]  Another design aspect addressed by Ms. Monaco in her deposition, is her observation that the absence of food slots in the administrative segregation cells was unsafe because it unnecessarily required corrections officers such as Defendant Torrez to actually enter inmates' cells to provide and remove lunch trays.  (*Id*. at page70). Ms. Monaco found this design flaw to be deliberate.  (*Id*. at 86).

[8]  Ms. Monaco opined that the staffing problems in the segregation unit were deliberate (*Id*. at 84-86).

[9]  Specifically, she opined that the routine pattern of the checks in the segregation unit violated accepted norms of prison staffing.  (*Id*. at 88).  It was further her opinion that checks of housing units should be done on a randomized schedule so that neither inmates nor staff particularly know when the checks are conducted.

8

Further, Ms. Monaco testified that a person of Defendant Newton's experience must have known about the obvious risk. At pages 84-87 of her deposition, she testified:

> . . .it was readily apparent to anyone that has any experience in corrections as do many of these people. . . Tom Newton and others, that this created a voyeuristic atmosphere and anyone with experience and even people without experience would know immediately that this was an uncomfortable situation, and their failure to then do something about that design, having designed in the first place and not changed it I think is deliberate.

> I think the failure to staff that segregation unit which is a high risk area without a backup staff, is deliberate. . . . I think the earlier policy and procedure that I saw and reviewed that talked about the backup staff . . . is an indication that the people who run this facility knew then and continue to know that the proper staffing for this facility for a segregation unit or a high risk area is two staff people, one in and one out. I think their failure to put the right staff there is deliberate.

> . . . the design and operation of that unit was all within the control of CCA and their managers and their wardens, that they in not operating the unit in compliance with the accepted norm in the industry, rise to deliberate indifference when they knew what that norm was and what it should have been.

She testified that the failure to have two officers on the floor and one in the central control center did not comply with the accepted norm. (Monaco Depo. at 88). She testified that the design of the unit, of the shower units and the way the unit was operated violated accepted norms.


This is the substance of the evidence as to the actual conditions of this prison. Bearing in mind that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety, I must first determine whether these conditions posed an excessive risk to inmate health or safety. Taken in the light most favorable to Plaintiff, I must conclude that they do not. Even assuming Defendants knew of all of the adverse conditions as described by

9

Plaintiff in her brief, these are not the kind of obvious and horrible conditions from which inferences can lead to inescapable liability.  The circumstances involving the location and viewability of the shower areas, absence of food tray slots, and the staffing and monitoring of the guards, do not arise to conditions that create a substantial risk of serious harm.  These conditions simply do not compare with the level of dangerousness contained in the caselaw that has been found to mandate liability.  See, for example, *Hutto v. Finney*, 437 U.S. 678 (1978), *reh. den. 1979*(prison conditions included extreme overcrowding, rampant violence, insufficient food and unsanitary conditions);  *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980)(Findings of Eighth Amendment violations in areas of shelter, food, sanitation, safety and medical care).  In sum, Plaintiff has not shown she was incarcerated under conditions posing substantial risk of serious harm.  This makes a finding of "deliberate indifference" impossible.

　　While I am cognizant that the physical structure of cellblocks and insufficient staffing can increase the potential for violence in a prison setting, even if I were to analyze the Defendants' state of mind, I have seen no evidence, such as deposition testimony from Warden Newton,  as to what he  or other prison officials did know, or of circumstances of which they were aware, to support knowledge of an increased potential for violence here.   The only direct evidence about the knowledge of prison officials is quoted above from the affidavits from Wardens Newton and Lopez and supports a contrary conclusion:  that they were unaware of such possible risks arising from design of the K pod segregation unit or based upon the history of two sexual assaults at this facility during the prior five years.

　　Furthermore, Plaintiff's expert's testimony is weak on this issue.  Assuming without deciding that expert testimony could provide an adequate factual basis to meet the *Farmer*

standards of deliberate indifference, the Court nevertheless finds this testimony to be insufficient. As noted above, in her deposition, Ms. Monaco stated that Tom Newton and others must have known that a voyeuristic atmosphere existed in this unit that was an "uncomfortable situation" and the failure to correct it was "deliberate".  She stated that the people who run this facility must have known that proper staffing in this unit would have been two guards, not just one.  She stated generally that the design and operation of the unit were not in compliance with the accepted norm in the industry and that this rises to the level of deliberate indifference.  Ms. Monaco's designation of an "uncomfortable situation" and improper staffing, as well as design and operation of a unit "not in compliance with the accepted norm in the industry" simply does not meet the heavy burden of establishing that these officials knew of and disregarded a substantial risk of serious harm to inmate health or safety.

The Defendants have posed numerous objections to consideration of Ms. Monaco's opinions,  that the Court will not expressly address.  Suffice it to say that in this Court's opinion, this expert testimony, relied upon almost exclusively by Plaintiff, is simply inadequate to create a genuine issue of material fact.  Plaintiff has not met her burden of setting forth specific facts to support a conclusion that a reasonable jury could find deliberate indifference by these Defendants in this case.

In summary, I am unable to conclude that the alleged  voyeuristic environment, lack of food slots,  inadequate staffing, lack of monitoring of Defendant Torrez while he was in the cell, lack of another [roving] officer while Torrez was in the cell, and lack of irregular checks, all of which Warden Newton presumably was aware, singly or collectively constituted an "obvious danger".  Furthermore, even if these circumstances constituted objectively inhumane prison

11

conditions (which they don't),  without evidence of the "sufficiently culpable state of mind" of

Defendants, there can be no liability under the Eighth Amendment.

In reaching the conclusion that the cumulative effect of these factors does not constitute a

significant risk, I am constrained by the principle that the Eighth Amendment outlaws cruel and

unusual "punishments," and "conditions".  While these conditions may be no cause for

commendation, they cannot be condemned as the infliction of punishment under the Supreme

Court's cases.  *Farmer v. Brennan* at 838.

### C.  Medical Care Discussion —Count III

States have a constitutional duty to provide necessary medical care to their inmates,

including psychological and psychiatric care.  *See Riddle v. Modragon*, 83 F.3d 1197, 1202 (10th

Cir. 1996).  To demonstrate a section 1983 claim for failure to provide such care, the plaintiff

must show "deliberate indifference on the part of prison officials and . . . [that] the prisoner's

medical needs [are] serious."  *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

> A medical need is serious if it is . . . one that has been diagnosed by a physician as
> mandating treatment or one that is so obvious that even a lay person would easily
> recognize the necessity for a doctor's attention. . . .   Deliberate indifference to
> serious medical needs is shown when prison officials have prevented an inmate
> from receiving recommended treatment or when an inmate is denied access to
> medical personnel capable of evaluating the need for treatment.

*Id.* (citations omitted).  *See also Twyman v. Crisp*, 584 F.2d 352, 355 (10th  Cir. 1978).

While Defendants do not dispute that Plaintiff's need for psychological care was "serious",

they do dispute that they were deliberately indifferent to her medical needs, claiming that they

provided her with adequate psychological care.  The standard for establishing deliberate

indifference in this context is the same as that discussed above, under the *Farmer v. Brennan*

case.

The evidence in the record as to what psychological care was provided by Defendants to Plaintiff is as follows.  Prior to and following this incident Plaintiff received psychiatric care at the facility.  Warden Newton stated in his affidavit that Plaintiff had access to psychiatric and psychological attention as requested.  Newton Aff. at ¶ 15.   After the assault, Plaintiff's care was assessed by an independent psychiatric medical evaluator, Dr. Blanca Loubriel-Kampa, who prepared a Psychiatric Medical Evaluation.  According to page two of this evaluation, Plaintiff was seen by a masters level therapist and a psychologist, following the assault and Plaintiff had "open access to psychotherapists before and after the sexual incident".   On page 6,  Dr. Loubriel-Kampa concluded that Plaintiff's psychological treatment has been "reasonable and appropriate." and that Plaintiff's "own paranoia appears to interfere with her ability to use psychotherapy to its fullest".

Plaintiff's psychological care was characterized by Defendants as being on a regular basis.  Defendants attached copies of Plaintiff's psychological records from June 1994 to December 1994 to their Reply Brief.  As I read Warden Lucero's affidavit, during this period of time Plaintiff saw Dr. William Hunter, a psychiatrist, and Marita Delaney, a Ph.D. psychologist.  Although many of the dates are illegible, it appears from these records  that Plaintiff saw Dr.  Hunter 18 times during this period of time. There are entries with Ms. Delaney's signature regarding Plaintiff for at least 100 days during this 6 month period.

On page 55 of her deposition, Plaintiff stated that she had never seen a real psychiatrist to give her the counseling or help that she needed.  She did state that she had seen two mental health professionals, Gus Frollick and Merita Delaney, before the incident and that Dr. Delany was

13

helpful to her.  She was unable to say whether Frollick was a psychiatrist or a psychologist.

Plaintiff testified that she felt punished after the rape, due to the fact that Defendants took away her "good time" and kept her in lock-up.  She stated that the lock-up was because she would hurt herself otherwise.   Giron Depo. at 55.  She also testified that she saw Dr. Hunter who prescribed medication to her for what he called manic depression.  She testified that Defendants had a guard at her door 24 hours per day because she was constantly trying to kill herself.  *Id.* at 58.

Based upon the undisputed facts on this issue, I conclude that, as a matter of law, Defendants were not deliberately indifferent to Plaintiff's medical needs.  A mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment that the inmate receives does not support a claim of cruel and unusual punishment.  *See Smith v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976).  I have reviewed the medical records and find no evidence that Defendants were deliberately indifferent to Plaintiff's medical needs.

In fact, I conclude that Defendants responded reasonably, given these circumstances. Prison officials who act reasonably cannot be liable under the Cruel and Unusual Punishment Clause.  *Farmer v. Brennan* at 845. Once again, Plaintiff has failed to present evidence that Defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that they drew the inference that such serious harm existed from a lack of medical care.  For these reasons, Defendants' motion on the medical care issue must be **granted**.

Given my conclusion that there was no deliberate indifference to Plaintiff's constitutional rights in terms of prison conditions, supervision or medical care, it is unnecessary to address the

14

causal connection or "good faith" defense issues raised in Defendants' briefs.

For the reasons stated above, CCA Defendants' Motion for Partial Summary Judgment on Counts II and III of Plaintiff's Complaint (Docket No. 144) is **granted** and these two counts are **dismissed.**

IT IS SO ORDERED.

_____
**U.S. DISTRICT COURT JUDGE**

15