IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TANYA GIRON,**

        Plaintiff,

v.                                                                                    CIV. No. 96-0980 LH/DJS

**CORRECTIONS CORPORATION OF AMERICA,** a Delaware corporation, **WARDEN THOMAS NEWTON** in his individual capacity, and **CORRECTIONS OFFICER DANNY TORREZ** in his individual capacity,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Danny Torrez' Motion for Summary Judgment (Docket No.134). This motion seeks dismissal of Count I of Plaintiff's complaint, that alleges that Defendant Torrez, in his individual capacity, breached Plaintiff's Eighth Amendment rights pursuant to 42 U.S.C. § 1983. It also seeks dismissal of Count IV of Plaintiff's complaint, that alleges intentional tortious acts against Plaintiff by Defendant Torrez.

For the reasons that follow, the Court concludes that Defendant Torrez' Motion for Summary Judgment is not well taken and shall be **denied**.

## I. Undisputed Facts

The following facts are undisputed for purposes of this motion and are relevant to the

1

issues raised.

At all relevant times, Plaintiff was an inmate at the New Mexico Women's Correctional Facility ("NMWCF") in Grants, New Mexico. The Corrections Corporation of America ("CCA") operated the NMWCF pursuant to a contract with the State of New Mexico Corrections Department. CCA is a private, for-profit corporation. On May 26, 1994, Corrections Officer Danny Torrez ostensibly entered Plaintiff's cell to pick up a food tray. Defendant Torrez was acting as the "utility officer" or "rover" for the segregation unit in which Plaintiff was housed. Rovers in the segregation unit did routine "checks" on all of the inmates in the unit every fifteen or thirty minutes, picked up food trays, handed out medications, and escorted inmates to recreation. The only other corrections officer present in the unit was the "control officer" who opened cell doors for persons entitled to enter the cells and who logged everyone's movements in the unit. The "control officer" opened the cell door for Defendant Torrez.

Upon entering Plaintiff's cell, Defendant Torrez slammed the food tray and then the door behind him. Defendant Torrez forced Plaintiff to have sexual intercourse with him. Plaintiff strenuously resisted the assault, struggling throughout the entire incident. Defendant Torrez was aware that sexual contact with an inmate would violate CCA policy.     After the rape, Defendant Torrez exited the cell, took Plaintiff's food tray with him and then proceeded to pick up other food trays in the unit.

Inmates at this facility are subject to discipline for refusing to obey corrections officers' orders or for failing to perform work properly as instructed by a corrections officer. Corrections officers in the housing units "guard inmates[,], [m]aintain order by enforcement of rules and regulations[, and] [c]ontrol movements of all traffic throughout the unit including . . . inmates."

2

(Grants Facility Post Order No. 4, Exhibit 3, Pl's. Resp. to Def's. Motion for Summary Judgment).

## II. Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The inquiry then is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-252.

In the recent case of *Richardson v. McKnight*, 117 S.Ct. 2100 (1997), the United States Supreme Court held that prison guards who are employees of a private prison management firm are not entitled to qualified immunity from suit by prisoners charging a violation of 42 U.S.C. § 1983. In reaching this holding, the Court concluded that its examination of the history and purpose of the doctrine reveals nothing about the job or about its organizational structure that would warrant providing private prison guards with a governmental immunity. In that case, the Supreme Court expressly declined to address whether defendants could be liable under § 1983 even though they were employed by a private firm. That Court left it to the district court to determine whether, under *Lugar v. Edmondson Oil*, 457 U.S. 922 (1982), defendants actually acted "under color of state law". In other words, the Supreme Court expressly declined to address whether defendants, employees of a private firm, were liable under § 1983. This is

precisely the issue before this Court.

### A. State Action/Color of State Law

In order to state a claim under § 1983, a claimant must show (1) deprivation of a right secured by the federal constitution or federal laws; and, (2) that the deprivation was caused by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). Plaintiff argues that her constitutional right to be secure in her bodily integrity and free from attack by prison guards as guaranteed to her by the Cruel and Unusual Punishment Clause of the Eighth Amendment of the United States Constitution was violated by Defendant Torrez. (Compl., ¶ 11). For purposes of this motion, Defendant Torrez admits that he raped Plaintiff; such an act clearly violated her constitutional right to bodily integrity. *See Albright v. Oliver*, 510 U.S. 266, 271-73 (1994). Defendant Torrez argues that this claim should be dismissed because he was not a state actor, or alternatively because he was not acting under color of law.[1]

Plaintiff, in order to prevail under § 1983, must show that Defendant Torrez was acting under color of state law. The "under color of state law" requirement is a "jurisdictional requisite for a § 1983 action". *Polk County v. Dodson*, 545 U.S. 312 (1981). A defendant acts "under color of state law" when he "exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id*. at 49. This means that the conduct must be fairly attributable to the state so that the person may fairly be said to be a state actor. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Pino v. Higgs*, 75 F.3d

---

[1] In *United States v. Price*, 383 U.S. 787, 794 n.7 (1966), the Court stated: "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." While the Supreme Court, in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18 (1982) left open the theoretical possibility that action under color of state law might not always constitute state action, the example given by the Court of a private person applying a state statute has no relevance to this case.

1461, 1463 (10th Cir. 1996). That would require that the private person acted together with or was jointly engaged with state officials in the challenged action, or that he obtained significant aid from state officials, or that his conduct is otherwise chargeable to the state. *Lugar*, 457 U. S. at 937; *Pino v. Higgs*, 75 F.3d at 1465.

> Not every act of wrongdoing committed by a public employee will constitute "state action." For the state to be held responsible for an employee's actions, such actions must flow from his or her job duties or state-conferred authority. Although no single factor will be decisive, courts usually examine such factors as whether the employee was on duty, whether his contact with the victim was caused by or required by his official job duties, or whether the employee actually used state-conferred authority to accomplish the deed. . . . As the Fifth Circuit stated in *Doe v. Taylor Independent School District*, [15 F.3d 443 (5th Cir. 1994), *cert. denied*, 513 U.S. 815 (1994)], a real nexus between the activity out of which the violation occurs and an employee's duties must exist before the state is accountable for the conduct.

"The State Action Requirement in Cases Brought Under 42 U.S.C. § 1983", 121 Ed. Law Rep. 875 (1997).

There are various standards used by the Court to analyze whether or not state action is present in any given situation.[2] The standard relied primarily upon by Plaintiff Giron is the public function or governmental function test. Prior to the Supreme Court's decision in *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 632 (1991), the public function test required that the function conducted by a private party must have been a "traditionally exclusive government function." *See Rendell-Baker v. Kohn,* 457 U.S. 830 (1982). In *Edmonson v. Leesville Concrete Co.* however, the Court held that private parties become state actors when they exercise peremptory challenges. As noted by the *Edmonson* dissent, the public-function test, prior to this case, required that the private actor exercise a power "traditionally exclusively

---

[2] The Supreme Court has articulated four distinct approaches to the state action question: public function, state compulsion, nexus and joint action. *See Lugar*, 457 U.S. 939. The Supreme Court has not indicated whether these approaches are merely factors or independent tests.

reserved to the State", citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 1570160 (1978). The *Edmonson* dissent noted that it has never been exclusively the function of the government to select juries – that peremptory strikes are older than the Republic, and that the prior requisite "exclusivity" element was lacking. Thus, it appears that the presence of "exclusivity" is no longer a true prerequisite to a finding of government function.

    I do not believe that the recent *Richardson* case changes this analysis. Although *Richardson* noted that "correctional functions have never been exclusively public", *Id* at 2104, it did not conclude that correctional functions are not government functions. For one thing, the fact that a function may be privately performed does not exclude it from the "government function" category. *See, Street v. Corrections Corporation of America*, 102 F.3d 810, 814 (6th Cir. 1996) and *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352 (1974). The function of incarcerating people, whether done publicly or privately, is the exclusive prerogative of the state. This is a truly unique function and has been traditionally and exclusively reserved to the state. For example, the government must retain final control with respect to inmate admissions and releases and further deprivations of basic freedoms, including, for example, disciplinary action, parole, good time credit, and furloughs. The fact that correctional functions have never been exclusively public does not mean that, because run by a private corporation, that the extent of the governmental nature of the function is any less. Only the government is empowered to incarcerate a citizen, and Defendant Torrez, as a corrections officer, was a state-regulated private actor performing the basics of this function. Defendant Torrez was "acting under color of state law" in that he was performing a "traditional state function" of checking on an inmate at the time he was admitted by the "control officer" into Giron's cell.

It should be noted that this case is distinguishable from those cases that involve the acts of private contractors who administer public contracts. *See Blum v. Yaretsky*, 457 U.S. 991 (1982); *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982); *Polk County v. Dodson*, 454 U.S. 312 (1981). In such cases the Supreme Court noted that the following circumstances did not support a claim of state action: high percentage of funding by the government to the institution at issue; significant or total engagement in performing public contracts; extensive regulation of the institution by the state. These cases involved much more private functions surrounding discharge decisions, personnel decisions, and issues in an attorney-client relationship, none of which is the function at issue in this case. Because the function performed by Defendant Torrez is one that has been "traditionally the exclusive prerogative of the State," *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974) this case is distinguished from the line of cases in which state action has not been found.

"If a private actor is functioning as the government, that private actor becomes the state for purposes of state action." *Terry v. Adams*, 345 U.S. 461, 469-70 (1953). If a private company operates a prison, the state is directly involved in some aspects of prison life, such as using force when necessary or making quasi-judicial decisions. Constitutional "liability attaches only to those wrongdoers 'who carry a badge of authority of [the government] and represent it in some capacity.' " *National Collegiate Athletic Ass'n. v. Tarkanian*, 488 U.S. 179, 191 (1988). A defendant acts under color of state law when he abuses a position given to him by the state. *West v. Atkins*, 487 U.S. 42, 50 (1988). I conclude that Torrez was able to rape Plaintiff only because of the abuse of his position as a corrections officer.

Plaintiff Giron argues that CCA is a "state actor" and acts under color of state law

because it performs an exclusive public function, citing *Street v. Corrections Corporation of America*, 102 F.3d 810, 814 (6th Cir. 1996). Plaintiff goes on to argue that Defendant Torrez' assertion that he was not acting under of color of state law must be analyzed in light of his employment by a state actor. The Court interprets this argument as one trying to categorize Defendant Torrez as a state employee. The Court rejects any such argument. Clearly Torrez was the employee of a private corporation[3], and it is this fact which the Court must address in its state action analysis.

The delegation of governmental authority to a private person may nonetheless make the private party a state actor.[4] Thus the proper inquiry is whether Defendant Torrez was performing a "government function" at the time of this sexual assault. I recognize that this governmental or

---

[3] The law clearly recognizes a distinction in this area between state and private employees ("State employment is generally sufficient to render the defendant a state actor." *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 935-36 n.18 (1982)). Consequently, both parties' reliance on the case of *Jojola v. Chavez*, 55 F.3d 488 (10th Cir. 1995), a case involving a state employee, is not on point to the facts in this case. That case involved a school custodian, a state employee, who sexually molested a student and who was sued under 42 U.S.C. § 1983. The trial court concluded that this did not constitute state action, despite defendant's status as a state employee. The Tenth Circuit affirmed the trial court, finding an exception to the general principle that "state employment is generally sufficient to render the defendant a state actor", *Lugar*, 457 U.S. at 935-36 n.18. The exception utilized by the Court was based on the fact that the circumstances in the case did not fit within the principle that an individual employed by the state who violates another individual's federal rights, in most cases will do so by virtue of the authority vested in them under state law. *Jojola* concluded that this sexual molestation constituted circumstances where a tort by a state employee simply could not have been committed on account of the authority vested in the employee by the state. In other words, the fact that a tort was committed by a state employee does not, *ipso facto*, warrant attributing all of the employee's actions to the state. *Jojola* concluded that a contrary result would improperly impose liability on the state for conduct for which it cannot be fairly blamed. Although the custodian was on duty at the time of the incident, none of his job duties involved contact with children. The Court found it too great a stretch to conclude that the custodian's rape of a child was in any related to his job responsibilities or authority. Mr. Jojola did not use state conferred authority to enable him to commit the offense, as did Defendant Torrez.

[4] The Supreme Court has repeatedly held that "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Evans v. Newton*, 382 U.S. 296, 299(1966). *See Terry v. Adams,* 345 U.S. 461 (1953)(private political association and its elections constitute state action); *Marsh v. Alabama*, 326 U.S. 501 (1946)(privately owned "company town" is a state actor). Moreover, a finding of government action is particularly appropriate when the function performed is "traditionally the exclusive prerogative" of government. *Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 353.

public function test applies in the state action context only in very limited situations. This principle is that, when a governmental entity delegates one of its traditional or "public functions" to a private entity, the private entity may be held liable under the Constitution with respect to its performance of that function. *Marsh v. Alabama*, 326 U.S. 501 (1946).

Thus, in *West v. Atkins*, 487 U.S. 42 (1988), a private physician who had contracted with a state prison to treat inmates, to satisfy the state's constitutional obligation to provide medical care, was held to be a state actor. The Supreme Court held that the private physician was not on a regular state payroll, but that his "function[s] within the state system, not the precise terms of his employment, [determined] whether his actions can fairly be attributed to the State." *Id*. at 55-56.

> If Doctor Atkins misused his power by demonstrating deliberate indifference to West's serious medical needs, the resultant deprivation was caused, in the sense relevant for state-action inquiry, by the State's exercise of its right to punish West by incarceration and to deny him a venue independent of the State to obtain needed medical care."

*Id.* at 55. *See also Plain v. Flicker*, 645 F. Supp. 898 (D.N.J. 1986)("if a state contracted with a private corporation to run its prisons it would no doubt subject the private prison employees to § 1983 suits under the public function doctrine." *See also Blumel v. Mylander*, 919 F. Supp 423 (D.Tenn. 1996) (same result).

I conclude that the government function doctrine applies in New Mexico when the state delegates the running of a prison to a private contractor. If a state government must satisfy certain constitutional obligations when carrying out its functions, it cannot avoid those obligations and deprive individuals of their constitutionally protected rights by delegating governmental functions to the private sector. *See Terry v. Adams*, 345 U.S. 461 (1953). The delegation of the

9

function must carry with it a delegation of constitutional responsibilities.

Torrez forced Giron to have sex with him under color of state law because he exercised coercive authority over her through his employment, and because he used his employment to gain access to her --  he used his state-conferred authority as a corrections officer to accomplish the deed. "The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." *Edwards v. Wallace Community College*, 49 F.3d 1517, 1522 (11th Cir. 1995) (citing *West v. Atkins*, 487 U.S. 42, 48-50 (1988). Without state authority, Defendant Torrez would not have been able to gain access to Plaintiff.  Torrez exercised power "possessed by virtue of state law and made possible only because he was clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). Torrez' actions constituted a misuse of the state authority he possessed and is fairly attributable to the State.  There is a real nexus between Torrez' misuse of his authority and the incident in question.  In other words, he was able to misuse his authority and gain physical access to Giron, which would not have otherwise been possible.

Similarly, in *Haines v. Fisher*, 82 F.3d 1503, 1508 (10th Cir. 1996), the Court held that on-duty policemen did not act under color of law when they staged a robbery as a practical joke on a friend who worked there, because they did not use their authority to carry out the plan.  In contrast, in *David v. City and County of Denver*, 101 F.3d 1344 (10th Cir. 1996), the Court held that the district court erred in dismissing a complaint against a police officer accused of making uninvited sexual advances toward a co-worker during off-duty employment.  The Court held that the co-worker might be able to state a claim if she could show that the officer, in committing the harassment, "had supervisory authority over her or in some other way exercised state authority

10

over her." *Id.* at 1354.

In this regard, the *Almand v. DeKalb County* case, 103 F.3d 1510 (11th Cir. 1997), *cert. denied,* is instructive. This case makes a decided distinction between two entries by a policeman into a woman's apartment: the initial one when he was invited into an apartment, based on his status as a police officer and the second one when he forcibly broke in and "was no different from any other ruffian." *Id*. at 1515. As in the first entry in *Almand*, Torrez' entry into Giron's cell was conducted under color of state law; he gained access because of his status as a corrections officer.

Section 1983 basically seeks to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights". *Wyatt v. Cole*, 504 U.S. 158, *cited in Richardson v. McKnight*, 117 S.Ct. 2100. I conclude that Torrez' "badge of state authority" sufficiently enabled him to perform this act. This was "state action".

### B. Immunity from State Tort Claim

Count IV of the complaint alleges that Defendant Torrez intentionally assaulted, battered, falsely imprisoned and intentionally inflicted emotional distress on Plaintiff when he raped her. In addition, this count alleges that Defendant Torrez was acting within the scope of his employment when he raped Plaintiff and that Defendants Newton and CCA are liable for his actions under the theory of *respondeat superior*. Under this count, Plaintiff seeks compensatory and punitive damages as well as an award of costs.

Defendant Torrez argues that if he is considered a state actor acting under color of law, then he should be immune from suit because the New Mexico Tort Claims Act has not waived the immunity of state corrections officers. Alternatively, he concedes that if he is not considered a

state actor acting under color of law, that he might not have such immunity.

As stated above, I have concluded that Defendant Torrez is a state actor.  Furthermore, I have expressly rejected the notion that he be considered a state or public employee.  I conclude that Defendant Torrez is not immune from Count IV, because he was not a "public employee" within the meaning of the New Mexico Tort Claims Act.

To act "under color of state law" under § 1983 and to act as a "public employee" under the Tort Claims Act, are distinct concepts.   The Tort Claims Act grants immunity from tort liability to "any public employee while acting within the scope of duty."  N.M. Stat. Ann. § 41-4-4(A) (Michie 1996).   The Act defines a "public employee" as "any officer, employee or servant of a governmental entity, *excluding independent contractors* except for individuals defined in Paragraphs (7), (8), (10) and (14) of this subsection."  N.M.. Stat. Ann. §41-4-3(F)(Michie 1996)(emphasis added).[5]  Defendant Torrez was an independent contractor's employee, and not a public employee, under the Tort Claims Act.  The Act therefore grants him no immunity from tort liability.

The statutory provisions governing employees of private prison operators reinforce this conclusion.  *See* N.M. Stat. Ann. §§33-1-10, 33-1-11, 33-1-17 (Michie 1990 & Supp. 1997).  According to §33-1-17(E), "[w]hen the contractor begins operation of a facility for which private contractor operation is authorized, his employees performing the functions of correctional officers shall be deemed correctional officers for the purposes of Sections 33-1-10 and 33-1-11 NMSA 1978 *but for no other purpose of state law. . . ."*  (emphasis added).  Sections 33-1-10 and 33-1-11 do not confer immunity for tort liability on correctional officers.  Thus, § 33-1-17(E) indicates

---

[5]Paragraphs (7), (8), (10) and (14) of subsection (F) clearly do not apply to Defendant Torrez.

that the legislature did not intend for the corrections officers employed by private prison operators to have the same tort immunities as those possessed by corrections officers employed directly by the state.

Finally, my reading of *Richardson v. McKnight*, 117 S.Ct. 2100, 2104-05 (1997), as discussed above, compels this conclusion.

For the reasons stated above, Defendant Danny Torrez' Motion for Summary Judgment (Docket No. 134) is **denied** in its entirety.

**IT IS SO ORDERED.**

_____
**U. S. DISTRICT COURT JUDGE**